IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEYDA Q. DROZ, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | No. 10-3238 |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | |

FILED
DEC 16 2010
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## REPORT AND RECOMMENDATION

TIMOTHY R. RICE December 15, 2010
U.S. MAGISTRATE JUDGE

Leyda Q. Droz seeks judicial review of the Administrative Law Judge's ("ALJ") decision rejecting her application for Supplemental Security Income ("SSI"). Droz asserts she is disabled due to bipolar disorder, suicidal feelings, and depression. R. at 151; see Plaintiff's Brief and Statement of Issues in Support of Request for Review at 2, Droz v. Astrue, No. 10-3238 (E.D. Pa. Oct. 12, 2010) [hereinafter Plaintiff's Brief].

Droz alleges the ALJ's decision is not supported by substantial evidence because the ALJ improperly rejected the opinion of Droz's treating physician. See Plaintiff's Brief at 2-15. Additionally, Droz claims the ALJ made an improper credibility determination. Id. at 6-8. As a result, Droz alleges the ALJ failed to: (1) properly evaluate whether Droz met listed impairment[1]

---

[1] The Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing "any" gainful activity, not just "substantial" gainful activity. Id.; see 20 C.F.R. § 416.925(a) (purpose of the listings is to describe impairments "severe enough to prevent a person

12.04;[2] and (2) properly determine Droz's Residual Functional Capacity ("RFC").[3] See id. After careful review, I find the ALJ's decision was not supported by substantial evidence. The ALJ improperly discounted Droz's treating physician's diagnosis based on speculation, see Plummer v. Afpel, 186 F.3d 422, 431 (3d Cir. 1999); see also 20 C.F.R. § 416.927(d); and the ALJ made an improper credibility determination, see Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

I respectfully recommend Droz's request for review be GRANTED and the matter be REMANDED for further proceedings consistent with this Report and Recommendation.

## BACKGROUND

On February 6, 2007, Droz sought SSI, alleging disability as of October 1, 2005. R. at 138-44. Her application was denied on August 3, 2007, R. at 101-05, and she timely sought a hearing, R. at 106-07. Droz testified on January 14, 2009. R. at 81.

The ALJ applied the required five-step sequential analysis to resolve Droz's disability

---

from doing any gainful activity"). The listing was designed to operate as a presumption of disability making further inquiry unnecessary. Sullivan, 493 U.S. at 532.

[2] The listing referenced by the ALJ in his decision was listing 12.04, which relates to Mood Disorders. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The required level of severity for these mood disorders is met when the claimant satisfies the requirements in both 12.04(A) and (B). 12.04(A) requires medically documented persistence, either continuous or intermittent, of one of the following syndromes: depressive, manic, or bipolar. Id. The claimant must then meet 12.04(B) by showing one of these syndromes results in at least two of the following: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Id. [hereinafter "Paragraph B Criteria"].

[3] RFC is what "an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

claim.[4] R. at 15-24. At step one, the ALJ found Droz had not engaged in substantial gainful activity at any time since she filed her application on February 6, 2007. R. at 17. At step two, the ALJ found Droz suffered from three severe impairments: affective disorder, depression and anxiety, and reported suicidal ideation. Id.

At step three, the ALJ found Droz's combination of mental impairments did not meet, or medically equal, listing impairment 12.04. R. at 17-18. Specifically, she did not satisfy the Paragraph B Criteria. Id. The ALJ found Droz has mild restrictions in activities of daily living and moderate difficulties in both social functioning and concentration, persistence, or pace.[5] R.

---

[4]The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified at 20 C.F.R. § 416.920. The steps of the analysis are summarized as follows:

Step One: If the claimant is working, and if the work is substantial gainful activity, the claimant is not disabled. If the claimant is not working or is not engaging in substantial gainful activity, the analysis proceeds to Step Two. 20 C.F.R. § 416.920(a)(4)(I).

Step Two: If the claimant has no severe impairment and no severe combination of impairments that significantly limits his physical or mental ability to do basic work activity, the claimant is not disabled. If there is a severe impairment or severe combination of impairments, the analysis proceeds to Step Three. 20 C.F.R. § 416.920(a)(4)(ii).

Step Three: If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404, the claimant is disabled. Otherwise, the analysis proceeds to Step Four. 20 C.F.R. § 416.920(a)(4)(iii).

Step Four: If the claimant retains the RFC to perform his past relevant work, the claimant is not disabled. If the claimant cannot do the kind of work he performed in the past, the analysis proceeds to Step Five. 20 C.F.R. § 416.920(a)(4)(iv).

Step Five: If the claimant's RFC, age, education, and past work experience, considered in conjunction with the criteria listed in Appendix 2 to Subpart P of 20 C.F.R. Part 404, would permit the claimant to adjust to other work, the claimant is not disabled. Otherwise, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v).

[5] The ALJ found no evidence of decompensation in Droz's file. R. at 18.

at 18.

Before moving on to the RFC assessment used in steps four and five, the ALJ explained these steps require a "more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B . . . ."[6] R. at 18. In determining Droz's RFC, the ALJ reviewed the objective medical evidence, the findings of Droz's treating physician, the opinions of psychological examiners, and Droz's hearing testimony. R. at 18-23. The ALJ explained Droz's statements concerning the intensity, persistence, and limiting effects of her symptoms are not proportionate to her "actual activities." R. at 22. The ALJ acknowledged Droz has been medically diagnosed with depression and anxiety, but concluded she has no physical impairments to limit her work activity,[7] and she "lives independently, drives, prepares her own meals, and leaves her apartment when she has to." Id.

The ALJ rejected the opinion of Droz's treating psychiatrist, Dr. Abel A. Gonzalez. R. at 19-21; see 20 C.F.R. § 416.927(d)(1)-(6). The ALJ reviewed Dr. Gonzalez's progress notes from February 24, 2006 to August 15, 2008 and concluded they were "carbon-copy-like in their remarks and findings[,] except for date." R. at 19-20. The ALJ reviewed Dr. Gonzalez's August 31, 2007 Medical Source Statement, which included a questionnaire noting Droz's mental ability to perform work activity was in the "poor or none" category. Id. Additionally, the ALJ acknowledged Dr. Gonzalez supplemented his medical source statement with a treatment letter

---

[6] Droz alleges the ALJ erred by only discussing medical evidence in determining Droz's RFC, and not during his step three analysis. Plaintiff's Brief at 3. However, the decision must be read as a whole, not each section in isolation. Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). There is a significant discussion of the medical evidence throughout the ALJ's opinion to permit review.

[7] Droz never alleged she suffered from any physical impairments. The ALJ should not have factored this into his analysis.

4

on January 9, 2009, in which he opined Droz has been "continuously 'disabled' and unable to do any type of work on a sustained basis due to her psychiatric symptomology . . . ." R. at 21, 290. The ALJ determined Dr. Gonzalez's January 9, 2009 comments were based on Droz's subjective complaints, and not on Gonzalez's own observations. R. at 21. The ALJ determined Dr. Gonzalez "employed rather extreme psychiatric language in his description of the claimant and her diagnosis," but his "session notes are cursory and essentially unrevealing." Id. The ALJ concluded Droz is not "so impaired that she is precluded from performing unskilled, simple work, not requiring any detailed instructions." R. at 22.

At step four, the ALJ found Droz has no past relevant work. R. at 23. At step five, the ALJ determined there are a significant number of jobs in the national economy Droz could perform based on her age, education, work experience, and RFC. Id. The ALJ did not list any jobs and a vocational expert did not testify at the hearing. Id. On June 24, 2010, the Appeals Council denied Droz's appeal. R. at 1-7.

## FACTUAL HISTORY

Droz was 46 years old at the time of the ALJ's decision.[8] R. at 138. She has a high school education and is fluent in Spanish, although she can speak and understand basic English. R. at 151, 156. A translator was used at the hearing. R. at 151. She lives alone in a rented house. R. at 84. She is divorced and has one daughter who she does not see. R. at 87-88. She

---

[8] Droz is considered a "younger person" under the Commissioner's regulations, which define a younger individual as a person under age 50. See 20 C.F.R. § 416.963(c). Age is one of the relevant factors in determining whether a claimant can adjust to other work in the national economy. Advancing age is "an increasingly limiting factor in a [claimant's] ability to make such an adjustment," 20 C.F.R. § 416.963(a); however, a younger person's age generally does not seriously impact the ability to adjust to other work, 20 C.F.R. § 416.963(c).

did not work in the 15 years preceding October 1, 2005. R. at 17, 23.

Droz's medical records showed a history of mental health treatment since September 27, 2005. R. at 190-291. Droz's relevant medical history is highlighted below:

- September 27, 2005: Following a domestic dispute, Droz was admitted to the emergency room for attempted suicide, which she denies.[9] R. at 195. Droz was hospitalized for a week and underwent a mental status evaluation conducted by Dr. David A. Doyle. R. at 191-95. He examined Droz and reported she was quiet and vague, provided little information, and appeared preoccupied with the pending separation from her husband. R. at 195. Dr. Doyle reported Droz displayed no suicidal or homicidal thoughts or perceptual abnormalities, spoke clearly, exhibited fair insight and judgment, and appeared well-nourished, cognitively intact, and pleasant. Id. Dr. Doyle diagnosed Droz with bipolar disorder, personality disorder, and hypertension. Id. Dr. Doyle prescribed Lamictal,[10] Lexapro,[11] and Abilify.[12] R. at 196.

- February 24, 2006: Dr. Gonzalez performed an initial psychiatric assessment of Droz, and diagnosed her with bipolar mood disorder. R. at 251-53.

- February 24, 2006 - October 30, 2007: Dr. Gonzalez maintained numerous progress notes

---

[9] Police brought Droz to the Emergency Room because she overdosed on medication after her husband threatened to end their marriage. R. at 245.

[10] Lamictal is used to stabilize mood in the treatment of bipolar disorder. See Dorland's Illustrated Medical Dictionary 1014, 1017 (31st ed. 2007) [hereinafter Dorland's].

[11] Lexapro is an anti-depressant medication. See Dorland's at 654, 1047.

[12] Abilify is used to treat schizophrenia and acute manic and mixed episodes of bipolar disorder. See Dorland's at 4, 133.

throughout this time period.[13] R. at 254-69. Dr. Gonzalez described Droz as depressed throughout, but also noted areas where Droz was improving. Id. Dr. Gonzalez also maintained Droz's current medications, but added Seroquel.[14] R. at 263.

- May 15, 2007: A local county crisis center brought Droz to the emergency room after she had a breakdown. R. at 223, 245. Droz complained of depression and underwent a psychiatric evaluation. R. at 206-23. The emergency nursing record described Droz as alert, clean, functioning independently, and appearing well nourished and hydrated. R. at 218. The records also note Droz was cooperative and maintained normal eye contact and speech. Id. Droz's behavioral health intake assessment revealed depression; an anxious and irritable appearance; no suicidal or homicidal plans; and good insight and judgment. R. at 223.

- May 22, 2007: Consultative examiner Dr. Stephen Rosenfield performed a clinical psychological disability evaluation. R. at 225-32. Droz complained of occasionally hearing voices, fearfulness of police officers, and past suicidal thoughts. R. at 227-28. Droz maintained eye contact, dressed appropriately, and exhibited normal posture, gait, manners, and hygiene. R. at 226-28. Droz appeared agitated, depressed, and easily distractable. Id. Dr. Rosenfield diagnosed Droz with generalized anxiety disorder, bipolar disorder, and personality disorder. R. at 229. Dr. Rosenfield evaluated Droz in the areas of activities of daily living, social functioning, and concentration, persistence, or pace. R. at 229-30. Dr. Rosenfield determined Droz: (1) was capable of paying bills and maintaining personal hygiene, and was responsible for cleaning,

---

[13] The progress notes consistently noted Droz's judgment and reliability were good. R. at 254-69.

[14] Seroquel is used as an "antipsychotic in the treatment of schizophrenia and other psychotic disorders." See Dorland's at 1590, 1723.

shopping, and cooking for herself;[15] (2) occasionally interacted with a neighborhood friend or two; and (3) was capable of independently remembering appointments and concentrating long enough to read, shop, and prepare meals. R. at 229-30. Nevertheless, Dr. Rosenfield expressed doubts as to whether Droz was able to complete assignments or sustain work or work-related activities. R. at 230.

- August 2, 2007: Non-examining, consulting state-agency psychologist Carl Sebastianelli completed a RFC Assessment. R. at 247-48. He did not find Droz markedly limited in any areas throughout his RFC assessment, which included categories such as understanding and memory, sustaining concentration and persistence, and social interaction. R. at 248. He concluded Droz could "meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment."[16] R. at 249.

- August 31, 2007: Dr. Gonzalez completed a medical source statement, including a questionnaire. R. at 270-74. Dr. Gonzalez diagnosed severe depression with psychotic features, generalized anxiety disorder, bipolar disorder, and obsessive compulsive personality. R. at 270. Dr. Gonzalez described Droz as having interval hypertension and noted a "guarded/poor" prognosis. R. at 271. Dr. Gonzalez attached a questionnaire where he consistently checked off "poor or none" to describe Droz's mental ability to work. R. at 271-74. Dr. Gonzalez

---

[15] Dr. Rosenfield made this statement based on the assumption that "there appears to be no one else there to do it for her." R. at 229.

[16] The Commissioner Defendant's brief references Sebastianelli's findings to support discrediting Dr. Gonzalez's opinion. See Defendant's Response to Request for Review of Plaintiff at 11, Droz v. Astrue, No. 10-3238 (E.D. Pa. Oct. 15, 2010) [hereinafter Defendant's Brief]. The ALJ, however, does not reference Sebastianelli's findings in support of his decision. R. at 15-24.

8

determined Droz would have difficulty working at a regular job on a sustained basis,[17] explaining "she has difficulty leaving her house; [and] can't concentrate at all." R. at 271.

- January 22, 2008 - August 15, 2008: Dr. Gonzalez completed progress notes for four sessions with Droz. R. at 286-89. Dr. Gonzalez's diagnosis remained unchanged. Id. Dr. Gonzalez encouraged Droz to comply with her medication and follow his advice. Id.

- January 9, 2009: Dr. Gonzalez supplemented his August 31, 2007 questionnaire with a letter to the Social Security Administration in support of Droz's disability application. R. at 290-91. Dr. Gonzalez noted Droz hears voices and feels as if people are talking about her. R. at 290. He also reported Droz has not had a social life for years. R. at 291. Dr. Gonzalez determined Droz exhibited "no considerable improvement since 2006." Id. He concluded "[Droz's] mood is predominantly depressed and anxious which affects her daily functioning in that she often forces herself just to get out of bed and get dressed in the morning," and her "extremely variable and unpredictable" mood dictates her daily accomplishments. R. at 290-91.

- January 14, 2009: Droz testified her depression began after she had her daughter 20 years ago, but she did not request treatment before 2005 because she feared her daughter would be taken away from her. R. at 87-88.

Droz testified her family in Puerto Rico helps her financially, and her neighbor's son helps her with grocery shopping, banking, and refilling her medications. R. at 92, 96. Droz admitted: (1) she owns a car, but rarely drives, R. at 85, 139; (2) she lives on her own and uses a microwave to cook, R. at 84, 92; (3) a friend drove her to the ALJ hearing, R. at 93; (4) she occasionally feels better for periods of two-to-three hours, R. at 95; (5) her prescribed

---

[17] A "sustained basis" means eight hours per day, five days a week. R. at 274.

medications helps sometimes, id.; and (6) she can follow instructions if they are repeated several times. R. at 94. She explained she does not engage in sports, hobbies, and social activities, attend church, or exercise; what she does at home depends on how she feels. R. at 85-86.

Droz maintained: (1) she dislikes leaving the house or being around people because they frighten her, R. at 86, 90; (2) she is afraid of getting lost while driving because she believes people will take her to the hospital if they think she is sick, R. at 91; (3) she sometimes gets so scared she locks herself in a closet because she fears everything, R. at 93; (4) she has difficulty following instructions, both written and oral, because her "mind goes blank," R. at 94; (5) she cannot maintain a schedule or routine because she does not "want to have to do anything" and "everything is the same to her," R. at 94, 96; and (6) she wants to die, R. at 88-89, 95.

## DISCUSSION

I.    Legal Standard

I must determine whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The factual findings of the Commissioner must be accepted as conclusive if they are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)); Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009); Rutherford, 399 F.3d at 552. "Substantial evidence is 'more than a mere scintilla.'" Diaz, 577 F.3d at 503 (quoting Plummer, 186 F.3d at 427. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Diaz, 577 F.3d at 503. I may not weigh the evidence or substitute my own conclusion for that of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir.

2002). I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. Diaz, 577 F.3d at 506. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently. Fargnoli, 247 F.3d at 38. At the same time, however, I must remain mindful that "leniency [should] be shown in establishing claimant's disability." Reefer, 326 F.3d at 379 (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

In addition, I retain "plenary review over the ALJ's applications of legal principles." Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, S.J.) (citing Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995)). Thus, I can overturn an ALJ's decision based on an incorrect legal standard even if I find it was supported by substantial evidence. Id. (citing Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; Diaz, 577 F.3d at 503. The claimant satisfies his burden by showing an inability to return to his past relevant work. Rutherford, 399 F.3d at 551. Once this showing is made, the burden shifts to the Commissioner to show the claimant, given his age, education, and work experience, has the ability to perform specific jobs existing in the economy. 20 C.F.R. § 404.1520; see Rutherford, 399 F.3d at 551.

An ALJ is obligated to "consider all the evidence and give some reason for discounting the evidence [he] rejects." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994). In making a RFC

determination, an ALJ has a duty to evaluate all relevant evidence in the record. Fargnoli, 247 F.3d at 41; Burnett, 220 F.3d at 121; Cotter v. Harris, 642 F.2d 700, 704-06 (3d Cir. 1981). An ALJ may not make speculative inferences from medical evidence, see Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), and cannot reject evidence for no reason or for the wrong reason, Diaz, 577 F.3d at 505. Therefore, an ALJ must explain the evidence supporting his findings and the reasons for discounting evidence he rejects, id. at 505-06; Cotter, 642 F.2d at 705-06, so a reviewing court can determine if significant probative evidence was improperly rejected or simply ignored. Burnett, 220 F.3d at 121; Cotter, 642 F.2d at 706-07.

II. Droz's Claims

A. The ALJ Improperly Rejected Droz's Treating Physician's Opinion

Droz alleges the ALJ improperly rejected or completely ignored the opinion of Droz's treating physician in evaluating whether listing 12.04 was met. See Plaintiff's Brief at 3.

A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient. 20 C.F.R. § 416.902. A treating physician's opinion is entitled to controlling weight, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); see 20 C.F.R. § 416.927(d)(2); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). The two major criteria considered are whether the treating physician's opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). The opinion may be accorded

"more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429 (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)).

In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports," and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317. "While the ALJ is, of course, not bound to accept physicians' conclusions, he may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Kent v. Schweiker, 710 F.2d 110, 115 n.4 (3d Cir. 1983). Thus, the ALJ may choose to reject a treating physician's assessment if it conflicts with other medical evidence, the ALJ clearly explains his reasons for rejecting the assessment, and he makes a clear record of his decision. See generally Rivera v. Barnhart, No. 04-2102, 2005 WL 713347, at *5 (E.D. Pa. Mar. 24, 2005) (collecting authorities). Reports involving a check-box or fill-in-the-blank form unaccompanied by thorough written reports constitute weak evidence at best. Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (citing Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986)).

Testimony from a non-examining source must also be considered by the ALJ, but is not entitled to deference. 20 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180, at *2. A non-examining source is an acceptable medical source who has not examined the claimant but who provides a medical opinion in the case. 20 C.F.R. § 416.902. It is error to "credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician." Franklin v. Barnhart, No. 05-2215, 2006 WL 1686692 at *11 (E.D. Pa. June 13, 2006) (quoting Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir.

13

1986)). The opinions of state agency reviewing psychologists and physicians are weighed by stricter standards than treating source opinions. 20 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180, at *2. Such opinions are credited only to the extent evidence supports them. Id. Crediting the view of a non-examining medical consultant, instead of a treating source or non-treating source, is sufficient only if the conflicting evidence is properly considered and explained. See Stewart v. Sec'y of HEW, 714 F.2d 287, 290 (3d Cir. 1983).

Here, the ALJ discounted a treating physician's diagnosis and extensive treatment history based on speculation and without reference to contradictory evidence. Since February 24, 2006, Dr. Gonzalez has consistently treated, and maintained progress notes on, Droz's mental impairments. R. at 251-74, 285-91. After numerous sessions with Droz, Dr. Gonzalez diagnosed her with severe depression, anxiety disorder, bipolar disorder, and obsessive personality disorder, which remained the same throughout her treatment. R. at 270, 286-89. Dr. Gonzalez's questionnaire attached to his medical source statement describes Droz's mental ability to work as "poor or none." R. at 271-74. Dr. Gonzalez also provided a supplemental letter describing Droz as "predominantly depressed and anxious which affects her daily functioning," and concluded Droz "presented no considerable improvement since February of 2006." R. at 290-91. This letter and the progress notes were provided in addition to the questionnaire. See Mason, 994 F.2d at 1065.

Without reference to contradictory evidence, the ALJ rejected Dr. Gonzalez's opinion, reasoning that notes from Droz's visits from 2006 through 2007 were "carbon-copy-like in their remarks and findings," R. at 20; and "although his session notes are cursory and essentially unrevealing, he employed rather extreme psychiatric language in his description of the claimant

14

and her diagnosis [in the supplemental letter]," R. at 21. See Morales, 225 F.3d at 317 (contradictory evidence required to discount the opinion of a treating physician). These assertions are factually inaccurate, confusing, and vague. Dr. Gonzalez acknowledged both positive and negative change in Droz's condition between 2006 - 2009. See R. at 251-74, 285-91. Moreover, Dr. Gonzalez prescribed a regime of drugs to treat Droz's symptoms. R. at 263.

The ALJ further claimed "Dr. Gonzalez's comments do not appear to be based on observation, but rather on the claimant's self-reported statements." R. at 21. Although an ALJ can discredit a treating physician's opinion based on a claimant's subjective complaints, the ALJ must properly discount the claimant's complaints first, which he failed to do. See Morris v. Barnhart, 78 F. App'x 820, 824-25 (3d Cir. 2003); discussion *infra* Part II, B. The ALJ also found Dr. Gonzalez's diagnoses of Droz throughout her 2008 visits were all listed as "same." R. at 21. This ignores the distinction between Droz's stability in a mental health clinic and a work setting. See Morales, 225 F.3d at 319. Moreover, the ALJ inaccurately stated Dr. Gonzalez's questionnaire was undated, and assumed it must have been completed after Droz's first session. My review establishes the questionnaire was dated August 31, 2007, and was written after numerous sessions with Droz over a two-year period.[18] R. at 274.

Droz's extensive treatment history supports Dr. Gonzalez's assessment. Dr. Rosenfield's evaluation and diagnosis supported Dr. Gonzalez's assessment, and Dr. Rosenfield also

---

[18] The Commissioner argued misstating the date on a report is a typographical error and is not a basis to remand when there is substantial evidence to discount the report. See Madison v. Astrue, No. 07-364, 2008 WL 2962337, at *6 (M.D. Pa. July 29, 2008). This argument is misplaced because the ALJ's error here was not a typographical error. These assumptions were erroneous and could have impacted the ALJ's analysis of the medical source statement, especially since the statement was written after numerous sessions with Droz.

expressed doubts whether Droz could complete assignments or sustain work or work-related activities. R. at 230. Emergency room records from Droz's visits on September 27, 2005 and May 15, 2007 demonstrate Droz complained of, and was diagnosed with, depression, and was prescribed medication to relieve her symptoms. R. at 195-96, 221. Droz's testimony and behavior at the hearing further corroborate Dr. Gonzalez's conclusions. R. at 83-96. The Commissioner nevertheless cites the findings of state-agency consultant Sebastianelli that Droz was not markedly limited in any categories on his RFC assessment. See Defendant's Brief at 11; R. at 248-49. However, Sebastianelli was a non-examining psychologist whose opinion conflicted with Droz's treating physician, and the ALJ never cited Sebastianelli's findings as support for his decision. R. at 15-24, 233-46.

The ALJ improperly made speculative inferences regarding Dr. Gonzalez's opinion, which was supported by his extensive, continued observation of Droz and corroborated by independent evidence. See 20 C.F.R. § 416.927(d)(2); Morales, 225 F.3d at 317 (ALJ shall not make speculative inferences from medical reports in choosing to reject a treating physician's opinion and shall accord controlling weight to a treating physician who has administered continuous, lengthy treatment). The ALJ's decision to reject Dr. Gonzalez's opinion of disability is not supported by substantial evidence.

B. Droz's Credibility

The ALJ's credibility determination was not supported by substantial evidence.

A credibility finding merits deference based on the ALJ's ability to observe the claimant's demeanor. See Reefer, 326 F.3d at 380; see also Bembery v. Barnhart, 142 F. App'x 588, 591 (3d Cir. 2005). I must nevertheless exercise meaningful review. See Cao v. United States, 407

F.3d 146, 152 (3d Cir. 2005). The reasons supporting credibility findings must be substantial and bear a legitimate nexus to the findings as demonstrated by inconsistent statements, contradictory evidence, or inherently improbable testimony. See Reefer, 326 F.3d at 380; accord St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 298 (3d Cir. 2005) (credibility determinations should not be reversed unless "inherently incredible or patently unreasonable" as long as the ALJ considers all relevant factors and explains his decisions). On medical questions, the ALJ's own observations and lay opinion "alone do not carry the day and override the medical opinion of a treating physician that is supported by the record." Morales, 225 F.3d at 317-19 (quoting Daring v. Heckler, 727 F.2d 64, 68 (3d Cir. 1984)). The ALJ's personal observations of the claimant "carry little weight in cases . . . involving medically substantiated psychiatric disability." Daring, 727 F.2d at 70; see also Morales, 225 F.3d at 319.

The ALJ rejected Droz's testimony regarding her ability to perform activities of daily living because he believed Droz "overstated" her description, R. at 17-18, and her "statements concerning the intensity, persistence and limiting effects of [her] . . . symptoms are not proportionate to her actual activities," R. at 21-22. The ALJ did not explain how he reached this view despite Dr. Gonzaelz's medical opinion. See Morales, 225 F.3d at 317-19. As Droz's treating physician for almost five years, Dr. Gonzalez concluded Droz has been minimally capable of sustaining a consistent routine since February 2006, and her extremely variable and unpredictable mood dictates what she can accomplish daily. R. at 290. The ALJ improperly used his own assumptions and observations to replace the medical evidence. See Morales, 225 F.3d at 317-19.

The ALJ's assumptions are also contradicted by the record. For example, the ALJ

17

supported his conclusion that Droz is mildly restricted in activities of daily living with her testimony, noting: "the claimant said she has no friends or relatives or anyone to do things for her and she described herself as a virtual recluse; however, she drives and without help, must get out of the house, shop, and prepare her own meals." R. at 17-18. Droz testified, however, she "almost never" drives because she is afraid, and her friend brought her to the hearing. R. at 85, 93. Droz also testified she is afraid to leave the house because she hears voices and she fears getting lost; R. at 86, 90; she occasionally locks herself in a closet, R. at 93; her neighbor's son does her grocery shopping, banking, and prescription refills, R. at 86, 92; and she spends large amounts of time without leaving her home, R. at 92-93. Although Droz lives alone, uses a microwave to cook, attends her appointments with the assistance of her friend or neighbor, and occasionally feels better for short periods of time, these facts do not prevent Droz from claiming statutory disability. See Smith, 637 F.2d at 971 (statutory disability does not mean Droz "must vegetate in a dark room excluded from all forms of human and social activity").

The ALJ did not support his credibility findings with reasonable explanations; his reasons did not have a legitimate nexus to the evidence as demonstrated by Droz's consistent testimony and Droz's treating physician's findings. See Reefer, 326 F.3d at 380; St. George Warehouse, 420 F.3d at 298; see also Morris, 78 F. App'x at 824-25.

C. Droz's Additional Claims

Droz also alleges the ALJ's RFC assessment is not supported by substantial evidence. See Plaintiff's Brief at 12-15. Because I recommend Droz's case be remanded for the ALJ's improper rejection of Droz's treating physician's opinion and for making an improper credibility determination, it is unnecessary to examine Droz's additional claim. A remand may produce

18

different results on these claims, making discussion of them moot. See Steininger v. Barnhart, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because ALJ may revise his findings after remand). For example, adopting Droz's treating physician's opinion and accepting Droz's testimony as credible could impact the ALJ's listing 12.04 analysis and RFC determination.

Accordingly, I make the following:

## RECOMMENDATION

AND NOW, this 15th day of December, 2010, it is respectfully recommended that Droz's request for review be GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this Report and Recommendation. The Commissioner may file objections to this Report and Recommendation within 14 days after being served with a copy thereof. See Fed. R. Civ. P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:

TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE